**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CARLOS A. PEREZ,**

            **Plaintiff,**

**-vs-**                                       **Case No. 6:07-cv-1947-Orl-31DAB**

**MICHAEL D. JOHNSON,**

            **Defendant.**

_____

## ORDER

This matter came before the Court without oral argument upon consideration of Defendant's, Michael D. Johnson ("Deputy Johnson"), Motion for Summary Judgment (Doc. 17) and Plaintiff's, Carlos A. Perez ("Mr. Perez"), response in opposition thereto (Doc. 21).

**I. Overview**

In his one-count Complaint, Mr. Perez alleges that on March 29, 2005, Deputy Johnson arrested him without probable cause, violating his right to be free from unlawful seizure as guaranteed by the Fourth Amendment (Doc. 12). Specifically, Mr. Perez contends that he was falsely arrested for a home invasion which he did not commit. He therefore brought suit against Deputy Johnson, both in his individual and official capacity, pursuant to 42 U.S.C. § 1983 ("§ 1983").

Deputy Johnson has moved for summary judgment contending, *inter alia*, that the undisputed material facts demonstrate he had probable cause to arrest Mr. Perez. Deputy Johnson,

however, concedes that Mr. Perez did not commit the home invasion for which he was arrested.[1] Instead, Deputy Johnson contends that Mr. Perez has failed to reveal any issue of disputed material fact concerning the lack of probable cause at the time of the arrest – an essential element of Mr. Perez' claim on which Mr. Perez carries the burden of proof. Additionally, Deputy Johnson asserts that even in the absence of actual probable cause, he at least had arguable probable cause to arrest Mr. Perez and should therefore be entitled to qualified immunity.

As addressed in further detail, *infra*, the Court concludes that Mr. Perez has failed to produce any evidence tending to show that Deputy Johnson lacked probable cause to arrest Mr. Perez. The Court, therefore, does not address Deputy Johnson's additional grounds for summary judgment. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**II. Factual Background**

At approximately 1:00 AM on March 29, 2005, four[2] armed men invaded the home of Yanira Alvarado and Luis Garcia (Doc. 18-8). After assaulting the home's occupants at gun-point and stealing some jewelry, the four men fled the scene in a red Cadillac with a white top (Docs. 18-9 and 22-4 at 6). Ms. Alvardo, her daughter, Cindy Alvarado, and Mr. Garcia provided sworn statements to the Sheriff's deputies indicating that the four men were young Hispanics who were wearing dark clothes and bandanas (Doc. 18-9). Deputy Johnson heard the report concerning the

---

[1] Indeed, the actual perpetrators of the home invasion were apprehended some months after Mr. Perez' arrest.

[2] Although the sworn statements given to the Sheriff's Office by Ms. Alvarado, her daughter, and Luis Garcia indicate that four men took part in the home invasion, Mr. Garcia later testified in his deposition that there were actually five men present (Doc. 22-4 at 5). In deciding the instant motion, however, it is immaterial whether there actually four or five men who took part in the home invasion.

home invasion, including the description of the suspects, over the Orange County Sheriff's radio while making his patrols (Doc. 19-2 at ¶ 3).

Later that morning, at approximately 3:00 AM, Deputy Johnson responded to a call concerning four Hispanic men who had refused to leave a McDonald's located on South Orange Blossom Trail (Doc. 19-2 at ¶ 4). While heading south on his way to the McDonald's, Deputy Johnson spotted a tan, four-door sedan heading north on Orange Blossom Trail at an excessive rate of speed (Doc. 19-2 at ¶ 5). Deputy Johnson decided to initiate a traffic stop and made a U-turn to pursue the sedan (Doc. 19-2 at ¶ 5). As he was pursuing the sedan, Deputy Johnson noticed that the vehicle did not have a license plate (Doc. 19-2 at ¶ 5). The sedan made another U-turn and started heading south (Doc. 19-2 at ¶ 5). After making another U-turn, Deputy Johnson finally caught up with the sedan and turned on his overhead lights (Doc. 19-2 at ¶ 6). The driver of the sedan pulled over and Deputy Johnson exited his vehicle to approach (Doc. 19-2 at ¶ 6). As he approached the vehicle, Deputy Johnson noticed that there were four Hispanic men inside, two of whom were wearing dark-colored bandanas (Doc. 19-2 at ¶ 6). Recalling the earlier radio communication concerning the home invasion, which had occurred within the vicinity of the McDonald's, Deputy Johnson returned to his vehicle and called for backup (Doc. 19-2 at ¶ 6). Deputy Johnson also notified the on-call robbery detective, who informed him that the victims of the home invasion would be brought to his location for a "show-up" to attempt to identify the men in the sedan (Doc. 19-2 at ¶ 6). While Deputy Johnson realized that the sedan did not match the description of the vehicle in the radio communication, he believed the suspects could have changed vehicles. (Doc. 19-2 at ¶ 10).

A sheriff's deputy brought Ms. Alvardo, Cindy Alvarado, and Mr. Garcia to Deputy Johnson's location on South Orange Blossom trail to determine whether they could identify the men in the sedan. The four men in the sedan were each separated and lined-up outside the vehicle. According to Deputy Johnson, fellow detectives informed him that the victims[3] positively identified the suspects as the individuals who committed the home invasion (Doc. 19-2 at ¶ 7). Specifically, Deputy Anthony Brisinte told Deputy Johnson that the suspects had been positively identified and that he believed there was probable cause to make an arrest (Doc. 19-3 at ¶ 8). According to Deputy Brisinte, Ms. Alvarado identified the suspects as the men who committed the home invasion (Doc. 19-3 at ¶ 7).

Notwithstanding Deputy Brisinte's testimony, Ms. Alvarado stated in her October 27, 2008 deposition that she did not recall telling the officers that any of the four men were the individuals who had invaded her home (Doc. 22-3 at 13). In fact, Ms. Alvarado testified that the officers never asked her to identify any of the four men in the sedan (Doc. 22-3 at 13). While Ms. Alvarado knew that she was being taken to South Orange Blossom trail to identify the possible suspects (Doc. 22-3 at 11), she swore that the officers never even asked her any questions once they arrived at the show-up (Doc. 22-3 at 14).[4] However, in the sworn statement provided to the Sheriff's Office on March 29, 2005, Ms. Alvarado stated that she recognized three of the four men as the ones who had invaded her home (Doc. 18-8 at 2).

---

[3]Contrary to Deputy Johnson's affidavit, the evidence tends to show that only one victim – Ms. Alvarado – identified Mr. Perez and other assailants at the show-up.

[4]She and her husband also testified that the officers never suggested that the men at the show-up might be the individuals who had invaded her home (Docs. 22-3 at 11 and 22-4 at 8).

In contrast to Ms. Alvarado's conflicting testimony, the Plaintiff himself repeatedly stated in his deposition that a woman wearing a bandage specifically identified him as one of the men who had invaded her home during the show-up which took place on South Orange Blossom Trail (Doc. 18-2 at 63-65). Indeed, Mr. Perez offered the following testimony during his deposition:

> Q. Okay. Now, before leaving to transport you to the sheriff's office which is located on Colonial Drive – do you know if they brought anybody else to the traffic scene to see if they could identify you?
>
> A. Yes, ma'am...[I] seen [sic] a lady like bandaged up – like a lady bandaged up and she goes, "Oh, my" – she started crying. She said, "Yeah, that's him." That's what I remember. And then as soon as the officers heard that, they just flew me in the vehicle and closed the door.

(Doc. 18-2 at 63-64).

Similarly, another one of the suspects in the sedan testified during his deposition that a woman had positively identified him to the police at the show-up as one of the men who had committed the home invasion (Doc. 23-2 at 15-16).

When asked whether he recognized the women who had identified him to the police during the show-up on South Orange Blossom Trail, Mr. Perez testified:

> ...[I] remember she was Spanish because when I had my bond motion...to see if I could get a bond she was suppose to come in to like – I guess speak with the judge or she was like with the prosecutor as the evidence. And she – I remember her saying in Spanish, "No, no" – first, I remember she [sic] saying that she needs a translator. They had said, "Do we need a translator for the witness 'cause [sic] she speaks Spanish," I remember, so that's how I know [sic] she's Spanish.
>
> And then she wouldn't come in the courtroom. They said, "No, the lady's not going to come to the courtroom. She's very, absolutely scared."

(Doc. 18-2 at 64-65).

**III. Standard of Review**

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F.Supp.2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

...
...

**IV. Analysis**

An arrest made with probable cause constitutes an absolute bar to a § 1983 action for false arrest. *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (citations omitted). The absence of probable cause is an essential element of a § 1983 claim for false arrest upon which the plaintiff bears the burden of proof. *Rankins v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998)(citing *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997)). Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense. *Ortega*, 85 F.3d at 1525 (11th Cir. 1996). Reasonably trustworthy information available to the officer may include statements and information provided by another officer. *See*, *e.g.*, *Alderman v. McDermott*, No. 6:03-CV-41, 2004 WL 1109541, at *6 n. 93 (M.D. Fla. April 27, 2004)(fellow officer rule allows an arresting officer to assume probable cause to arrest a suspect from information supplied by other officers). Furthermore, the actual identification of a suspect by the victim of a crime generally constitutes probable cause. *See*, *e.g.*, *L.S.T., Inc. v. Crow*, 49 F.3d 679, 684-85 (11th Cir. 1995)(individual's identification at a show-up of those who assaulted and detained him constituted probable cause to arrest); *Gilmere v. City of Atlanta, Ga.*, 737 F.2d 894, 905 (11th Cir. 1984)(individual's identification of suspect who had pulled a gun on him constituted probable cause once the individual told officers, "That's him, he's the one"); *see also Mauldin v. United States*, 328 F.2d 779 (5th Cir. 1964)(agent's identification of suspect with whom he had come in close contact during standoff at site of unregistered liquor still hidden in swamp constituted probable cause for arrest after suspect had escaped).

Mr. Perez' two-page response in opposition to Deputy Johnson's Motion for Summary Judgement is directed solely at the absence of any identification of Mr. Perez by Ms. Alvarado or Mr. Garcia. Specifically, Mr. Perez points to the deposition testimony of Ms. Alvarado and Mr. Garcia, that neither one of them ever identified Mr. Perez to the officers during the show-up, as evidence of the lack of an identification prior to the arrest. Other than the deposition testimony of Ms. Alvarado and Mr. Garcia, Mr. Perez does not address any of the other evidence presented by Deputy Johnson in his Motion for Summary Judgment. In short, Mr. Perez contends that absent this identification evidence, Deputy Johnson lacked probable cause to arrest him.

While there is clearly an inconsistency between Ms. Alvarado's recent deposition testimony, her sworn statement on the actual date of the home invasion, and Deputy Brisinte's affidavit, Mr. Perez' own deposition testimony reveals that there can be no genuine issue of disputed material fact as to his identification prior to his arrest. Indeed, Mr. Perez readily conceded that a Spanish-speaking women, with a bandaged head, identified him to the officers during the show-up. Similarly, another one of the men in the vehicle with Mr. Perez testified that he too had been identified to the officers during the show-up prior to his arrest. While neither arrestee testified that the woman who had identified them was Ms. Alvarado, Mr. Perez swore that the same women who had identified him at the show-up was "absolutely scared" and refused to appear in court at his subsequent bond hearing.

Furthermore, Deputy Johnson has produced additional undisputed evidence in support of his belief of probable cause. Deputy Johnson swore that the four men in the sedan matched the description of the men he had received in the earlier radio communication. Consistent with that radio communication and Ms. Alvarado's sworn statement, at least some of the men were wearing

bandanas and dark clothing. Furthermore, the men in the sedan were apprehended within the vicinity of the home invasion. Mr. Perez has not come forward with any evidence which would tend to show a disputed issue of material fact with respect to any of these additional items of evidence.

In sum, the undisputed evidence shows that, under the circumstances, Deputy Johnson clearly had reasonably trustworthy information to believe that Mr. Perez had committed the home invasion. Although Mr. Perez was ultimately cleared of the home invasion charge, he has failed to reveal any issue of disputed material fact concerning the lack of Deputy Johnson's probable cause to arrest him on the morning of March 29, 2005. Inasmuch as Mr. Perez has failed to produce any evidencing concerning an essential element of his § 1983 claim for false arrest, the Court must grant the Motion for Summary Judgment.

**V. Conclusion**

For the foregoing reasons, it is hereby **ORDERED** that Defendant's, Michael D. Johnson, Motion for Summary Judgment (Doc. 17) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendant, Michael D. Johnson, and close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 5, 2008.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE